## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                        )
Carl Pizzoferrato,                      )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )        Civil Action No. 09-11531-DJC
                                        )
Domenic Tiberi, William Bausch,         )
Millis Police Department, and           )
Walpole Police Department,              )
                                        )
            Defendants.                 )
_____)

### MEMORANDUM AND ORDER

**CASPER, J.**                                              September 1, 2011

## I.  Introduction

Plaintiff Carl Pizzoferrato filed a *pro se* amended complaint that raises constitutional and tort-based claims against the Walpole Police Department ("WPD"), WPD Detective William Bausch, the Millis Police Department ("MPD"), and MPD Detective Dominic Tiberi.  The claims relate to an investigation of Pizzoferrato conducted by Detectives Tiberi and Bausch that resulted in Pizzoferrato's arrest on October 19, 2006 for selling cocaine to Detective Bausch when he was working in an undercover capacity.  Defendants MPD and Tiberi have moved to dismiss the amended complaint and Defendants WPD and Bausch have submitted a filing in opposition to Pizzoferrato's motion to file a second amended complaint that the Court construes[1] as a motion to dismiss.  For the reasons discussed below, the Defendants' motions to dismiss are GRANTED.

_____

[1]For a brief discussion of the Court's decision to construe Defendants WPD and Bausch's filing as a motion to dismiss, see note 3 below.

## II.  Burden of Proof and Standard of Review

To survive a motion to dismiss, a complaint "must 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,' and allege 'a plausible entitlement to relief.'" Decotiis v. Whittemore, 635 F.3d 22, 29 (1st Cir. 2011) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 559 (2007)).  The Court "accept[s] as true all well pleaded facts in the complaint and draw[s] all reasonable inferences in favor of the plaintiff[]." Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotation marks and citations omitted).  Although a plaintiff's *pro se* status does not excuse a failure to comply with the Federal Rules of Civil Procedure, McNeil v. United States, 508 U.S. 106, 113 (1993), "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted).

## III.  Background

In considering a motion to dismiss, the Court must accept non-conclusory factual allegations in the complaint as true, Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011), and does so here.

### A.  Pizzoferrato's Arrest and State Criminal Proceedings

On October 6, 2006, MPD Detective Tiberi received information from an informant that Pizzoferrato was selling cocaine in Millis, Massachusetts.  That same day, WPD Detective Bausch,

2

who was working in an undercover capacity, telephoned Pizzoferrato.  Detective Bausch subsequently maintained contact with Pizzoferrato over the next two weeks, telephoning him ten to twenty times and meeting with him in person twice.  Pizzoferrato repeatedly told Detective Bausch that he could not provide drugs for him.  Nonetheless, on October 10, 2006, Detectives Tiberi and Bausch set up a controlled drug buy from Pizzoferrato in Millis, with an informant and other undercover officers present.  The buy itself did not occur.

On October 19, 2006, Detective Bausch telephoned Pizzoferrato and made arrangements to buy cocaine from him in Millis.  Detective Tiberi gave Detective Bausch money for the undercover buy.  Detective Bausch arrived at the Little Peach parking lot at 5:45 p.m.  Pizzoferrato, a limousine driver, arrived at 6:00 p.m. driving a limousine.  According to an affidavit provided by Detective Tiberi and submitted by Pizzoferrato to this Court, Pizzoferrato then sold Detective Baush drugs.  Proposed Second Amended Complaint Appendix, D. 36 at R-9.  MPD officers seized Pizzoferrato's limousine and $2,139.

Pizzoferrato was charged with distribution of a Class B substance (cocaine), possession with intent to distribute a Class B substance (cocaine), a drug violation in a school zone and operating an unregistered motor vehicle (the latter charge was later filed).  After a three-day trial that began on March 10, 2008, a jury found Pizzoferrato guilty on the lesser included offense of possession of cocaine, but was found not guilty on the distribution and school zone charges.

On October 19, 2010, Pizzoferrato's sole conviction of possession of cocaine was vacated on Melendez-Diaz grounds.  Commonwealth v. Pizzoferrato, 78 Mass. App. Ct. 1104 (Table)

(2010), review denied, 458 Mass. 1111 (2010).[2]

**B. Federal Civil Proceedings**

On September 8, 2009, Pizzoferrato filed his initial *pro se* complaint in this case.  The *pro se* complaint was over 200 pages long and did not state any specific claims.  On February 1, 2010, Pizzoferrato moved to amend his complaint with a shorter *pro se* complaint.  On June 22, 2010, the Court denied Pizzoferrato's motion to amend, holding that the proposed amended complaint failed "to give the defendants fair notice of what the claims are and the grounds upon which they rest." D. 32.  The Court ordered Pizzoferrato to file an amended complaint by September 15, 2010.

Accordingly, on September 9, 2010, Pizzoferrato moved to amend his complaint.  The proposed second amended complaint discusses ten purported claims for relief, entitled "entrapment," "wrongful arrest," "unlawful search and seizure," "school zone violation," "informant - confronting your witnesses," "intentional infliction of emotional stress," "negligent infliction of emotional stress," "defamation," "duty to investigate," and "outrageous police misconduct."  Proposed Second Am. Compl., #35 at 11-19.

On October 20, 2010, MPD and Detective Tiberi moved to dismiss the proposed second amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that the allegations therein

---

[2]While Pizzoferrato's appeal was pending, the United States Supreme Court decided Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527 (2009), which held that a defendant's right to confront witnesses against him is violated by the introduction in evidence of certificates of analysis of narcotics unless the person who performed the tests is available to testify, or if unavailable, the defendant had a prior opportunity for cross-examination.  See Commonwealth v. Pizzoferrato, 78 Mass. App. Ct. 1104, at *1.  In Pizzoferrato's case, "the Commonwealth introduced a certificate of analysis of the substance in the two bags found in the defendant's vehicle," but "there was no evidence that any field tests were performed on the substance contained in the two bags found in the vehicle" and there "was testimony during the trial that the substances were sent to a laboratory 'run by the state,' and that they tested positive for cocaine" with no opportunity for cross-examination.  Id.

fail to state a claim upon which relief can be granted.

Similarly, on October 20, 2010, WPD and Detective Bausch filed an opposition to Pizzoferrato's motion to amend his complaint on the ground that the proposed second amended complaint would be subject to immediate dismissal under Rule 12(b)(6) for failure to state a viable claim for relief.[3]  The Court held a hearing on all pending motions on June 29, 2011, at which Pizzoferrato represented himself *pro se*.

On July 20, 2011, Pizzoferrato submitted a document to the Court entitled "New Revised Plaintiff's Claims for Relief," which purports to reorganize the allegations included in Pizzoferrato's second amended complaint into five (rather than ten) distinct claims.  The document does not appear to narrow or waive any of the allegations and purported legal claims in the second amended complaint; to the contrary, it adds novel allegations purporting to invoke Title II of the Americans with Disabilities Act, 28 U.S.C. §§ 509 *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.*  Pizzoferrato submitted this document without leave of Court and without the Defendants' assent.  To the extent that this document is meant to be construed as a motion to amend

---

[3]Because Pizzoferrato filed his proposed second amended complaint pursuant the Court's explicit instructions, and because the opposition filed by WPD and Detective Bausch invoked the same standard as a motion to dismiss, the Court grants Pizzoferrato's motion to amend his complaint and construes WPD and Detective Bausch's opposition as a motion to dismiss the complaint as amended.

Additionally, MPD and Detective Tiberi's motion and WPD and Detective Bausch's opposition, which were both filed prior to the state court decision vacating Pizzoferrato's conviction, each discuss at some length the doctrine of Heck v. Humphrey, 512 U.S. 477 (1944), which precludes civil actions that rely on factual allegations that, if true, would invalidate a criminal conviction that has not been otherwise invalidated.  See id. at 512 U.S. 486-87. Because Pizzoferrato's conviction was subsequently invalidated by the Massachusetts Appeals Court, 78 Mass. App. Ct. 1104 (2010), and that invalidation was affirmed by the Supreme Judicial Court, 458 Mass. 1111 (2010), the Heck bar does not apply to this case (as counsel for the Defendants agreed at oral argument) and the Court need not address the parties' Heck arguments.

the second amended complaint, the Court denies the motion pursuant to Fed. R. Civ. P. 15(a)(2).

Accordingly, the Court will limit its discussion to Pizzoferrato's second amended complaint and the

Defendants' motions to dismiss that complaint, topics that have been fully briefed and argued by all

parties.

## IV. Discussion

Understandably, many of the claims in Pizzoferrato's *pro se* second amended complaint are

imprecisely drafted.  The Court has attempted to construe these claims liberally, see Instituto de

Educacion Universal Corp. v. U.S. Dep't of Educ., 209 F.3d 18, 23 (1st Cir. 2000) (recognizing that

"complaints drafted by non-lawyers are to be construed with some liberality"), and analyzes the

claims, so construed, as follows.

### A. Pizzoferrato's State Law Tort Claims

#### 1. Intentional Infliction of Emotional Distress

Pizzoferrato claims that the defendants intentionally inflicted emotional distress upon him.

See Second Am. Compl. at 16 (sixth claim for relief).  Under Massachusetts law, the tort of

intentional infliction of emotional distress includes four elements:  "(1) that the defendant intended

to inflict emotional distress, or knew or should have known that emotional distress was the likely

result of his conduct . . . (2) that the defendant's conduct was extreme and outrageous, beyond all

possible bounds of decency and utterly intolerable in a civilized community, (3) [that] the actions

of the defendant were the cause of the plaintiff's distress, and (4) [that] the emotional distress

suffered by the plaintiff was severe and of such a nature that no reasonable person could be expected

to endure it." Payton v. Abbott Labs, 386 Mass. 540, 555 (1982).  This is a high standard.  "Liability

cannot be predicated on mere insults, indignities, threats, annoyances, petty oppressions or other

trivialities[,] nor even is it enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 466 (1997) (citations and quotations removed). Here, even taking all of Pizzoferrato's allegations as true, there is nothing in the complaint that suggests the defendants intended to do anything other than effectuate a lawful arrest and there is certainly no factual allegation that reaches the high standard of outrageousness and hostile intent necessary to support a claim of intentional infliction of emotional distress.

### 2. Negligent Infliction of Emotional Distress

Pizzoferrato claims that the defendants negligently inflicted emotional distress upon him. See Second Am. Compl. at 16 (seventh claim for relief). Under Massachusetts law, the tort of negligent infliction of emotional distress includes five elements: "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) [a provable allegation] that a reasonable person would have suffered emotional distress under the circumstances of the case." Abbott Labs, 386 Mass. at 557. Additionally, negligence claims against the Commonwealth of Massachusetts, its municipalities, counties and districts and the officers and employees thereof are subject to the presentment requirements of Mass. G. L. c. 258, § 4, which requires a complainant to present his claim in writing to the executive officer of the complained-about public employer and then wait six months or until the claim is rejected, whichever comes first, before filing suit. Mass. G. L. c. 258, § 4. Complying with this requirement is a "condition precedent to bringing suit." Spring v. Geriatric Auth. of Holyoke, 394 Mass. 274, 283 (1985).

7

Pizzoferrato's second amended complaint does not allege, and nothing in the record before the court suggests, that Pizzoferrato has satisfied this presentment requirement.

### 3.  Pizzoferrato's defamation claim

Pizzoferrato claims that the Millis Police Department defamed him.  <u>See</u> Second Am. Compl. at 17 (eighth claim for relief).  To prevail on a defamation claim under Massachusetts law, a plaintiff must establish (1) "that the defendant[] published a false statement about him to a third party" and (2) that the false statement "either caused [the plaintiff] economic loss or was of the type that is actionable without proof of economic loss."  <u>Phelan v. May Dep't Stores Co.</u>, 443 Mass. 52, 55-56 (2004).  "Four types of statements are actionable without proof of economic loss:  statements that constitute libel; statements that charge the plaintiff with a crime; statements that allege that the plaintiff has certain diseases; and statements that may prejudice the plaintiff's profession or business."  <u>Ravnikar v. Bogojavlensky</u>, 438 Mass. 627, 630 (2003); <u>see</u> <u>Phelan</u>, 443 Mass. at 56 (stating that "the imputation of a crime is defamatory per se, requiring no proof of special damages").

Here, Pizzoferrato's claim is based on a series of statements attributed to Millis Police Chief Peter McGowan by the Milford Daily News, stating that Pizzoferrato's "arrest was the result of more than one transaction," that the arrest "came after a two-week investigation," and that "[u]ndercover detectives bought cocaine from Pizzoferrato near a nursery school before arresting him and seizing $2,139 and his car."  Second Am. Compl. Appendix at 17.  To the extent Pizzoferrato's claim rests on the idea that Chief MacGowan's statements imputed that Pizzoferrato had committed the crime of selling cocaine, Pizzoferrato has failed to allege that the imputation was false - indeed, Pizzoferrato's complaint concedes that he sold cocaine to Officer Bausch - and thus fails to allege

the first element necessary for a defamation claim.

Alternatively, Pizzoferrato's defamation claim could be read as resting not on the general imputation of a crime to Pizzoferrato but rather on the alleged falsity of two specific details in Chief MacGowan's statement: that there was more than one transaction between Pizzoferrato and police and that one transaction occurred near a nursery school. Even assuming these details are in fact false - an assumption the Court must indulge on a motion to dismiss - these details do not fall within the four limited types of statements that constitute defamation per se that is actionable without proof of economic loss. Ravnikar, 438 Mass. at 630. Although Pizzoferrato's second amended complaint claims that the allegedly false details in Chief MacGowan's statements "strik[e] directly at the plaintiff's character and integrity," the complaint does not allege that these alleged false statements caused Pizzoferrato any economic loss. Second Am. Compl. Appendix at 17. Thus, even under the alternative reading of Pizzoferrato's defamation claim, Pizzoferrato fails to allege the second element necessary for a defamation claim. Accordingly, under either reading, the second amended complaint fails to state a defamation claim upon which relief can be granted.

## B. Pizzoferrato's Constitutional Claims

Pizzoferrato's second amended complaint specifically invokes 42 U.S.C. § 1983 in support of its constitutional claims. "Section 1983 requires three elements for liability: deprivation of a right, a causal connection between the actor and the deprivation, and state action." Sanchez v. Pereira-Castillo, 590 F.3d 31, 41 (1st Cir. 2009). Pizzoferrato's various constitutional claims are best analyzed on a claim by claim basis.

### 1. Entrapment

Pizzoferrato claims his rights were violated because he was entrapped into selling drugs to

Detective Baush.  <u>See</u> Second Am. Compl. at 11 (first claim for relief), 14 (fourth claim for relief).

Courts have consistently held that while entrapment may be a proper defense in a criminal case, it

does not create a civil cause of action pursuant to Section 1983.  <u>See, e.g.</u>, <u>DiBlasio v. City of New</u>

<u>York</u>, 102 F.3d 654, 656-57 (2d Cir. 1996) (noting that "[w]hile entrapment may be a proper defense

in a criminal action, a police officer's participation in such activity does not constitute a

constitutional violation") (quoting <u>Jones v. Bombeck</u>, 375 F.2d 737, 738 (3d Cir. 1967)); <u>Johnson</u>

<u>v. Hackett</u>, 284 F.Supp. 933 (E.D. Pa.1968) (quoting <u>Jones</u>); <u>Johnston v. Nat'l Broad. Co., Inc.</u>, 356

F.Supp. 904, 907-08 (E.D.N.Y. 1973) (finding "no decision justifying the conversion of entrapment

into an independent federal cause of action cognizable under Section 1983").  Accordingly,

Pizzoferrato's dual allegations of entrapment - both in his claim entitled "entrapment," Second Am.

Compl. at 11, as well as in his claim entitled "school zone violation," <u>Id.</u> at 14 (alleging that all

Defendants "entrapped the plaintiff by changing the meeting place to meet with him in a school zone

. . . thereby subjecting plaintiff to an enhanced mandatory sentence") - do not state a claim upon

which relief can be granted in a civil (as opposed to a criminal) action.

### 2.  False Arrest

Pizzoferrato claims Detectives Bausch and Tiberi should not have arrested him or seized his

"assets" post-arrest and that his Fourth Amendment rights were violated when they did so.  <u>See</u>

Second Am. Compl. at 12 (second claim for relief), 13 (third claim for relief), 18 (ninth claim for

relief).  "To prove a [S]ection 1983 false arrest claim, in the posture of this case at least, a plaintiff

must show at minimum that the arresting officers acted without probable cause."  <u>Mann v. Cannon</u>,

731 F.2d 54, 62 (1st Cir. 1984).  Probable cause to arrest exists where at the moment of arrest "the

facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably

trustworthy information were sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense." United States v. Figueroa, 818 F.2d 1020, 1022 (1st Cir. 1987) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). Here, Pizzoferrato was arrested after he sold cocaine to Officer Bausch. Pizzoferrato's sale of illegal drugs provided the defendants with probable cause to arrest him.

### 3.  Confrontation Clause / Sixth Amendment

Pizzoferrato claims that he was denied his Sixth Amendment right to confront witnesses because he was unable to confront a "citizen informant" who "interfered with the controlled-buy incident on October 10, 2006." Second Am. Compl. at 15 (fifth claim for relief). "Because the purpose of the Sixth Amendment is to guarantee that criminal defendants receive fair trials, a confrontation clause claim is properly raised in an appeal from a criminal conviction, or in a petition for habeas corpus relief, not, as here, in a freestanding § 1983 action." Baldi v. Amadon, 2003 WL 21355874, at *9 (D.N.H. June 9, 2003); see Imbler v. Patchman, 424 U.S. 409, 443-44 (1976) (White, J., concurring) (distinguishing between "the constitutional violation of suppressing evidence," which should be deterred "by permitting damage actions under 42 U.S.C. § 1983," from "constitutional violations committed in the courtroom - improper summations, introduction of hearsay evidence in violation of the Confrontation Clause, knowing presentation of false testimony - which . . . the judicial process [can] prevent or correct" during trial). Accordingly, Pizzoferrato's confrontation clause claim, like his "entrapment" claims, fails to state a claim upon which relief can be granted in a civil (as opposed to a criminal) action.

### 4.  Violations of Substantive Due Process

Pizzoferrato argues that, as a general matter, "outrageous police misconduct caused by all

four of the defendants . . . constitutes a severe violation of the plaintiff's due process rights." Second Am. Compl. at 16 (tenth claim for relief).  The opacity of Pizzoferrato's tenth claim, coupled with his assertion that the defendants' conduct was "outrageous," leads the Court to construe Pizzoferrato's tenth claim as a substantive due process claim.  To prevail on a substantive due process claim a plaintiff must show that the challenged state actions 1) "deprived him of a protected interest in life, liberty or property" and 2) "that the acts were so egregious as to shock the conscience."  Pagán v. Calderón, 448 F.3d 16, 32 (1st Cir. 2006);  see DePoutot v. Raffaelly, 424 F.3d 112, 118 n.4 (1st Cir. 2005) ("[c]onscience-shocking conduct is an indispensable element of a substantive due process challenge to executive action").  Here, even taking all of Pizzoferrato's allegations as true, no aspect of the defendants' alleged conduct is so egregious as to shock the conscience.

Accordingly, each of the individual claims in Pizzoferrato's second amended complaint, even if all of the factual allegations in the complaint are true, "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

## V.  Conclusion

For the reasons discussed above, the Defendants' motions to dismiss are GRANTED.

**So ordered.**

/s/ Denise J. Casper
United States District Judge

12